IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL KOLAWOLE OLUKOYA, *et al.*,    )
                                       )
                    Plaintiffs,        )
                                       )
v.                                     )    Case No. 8:18-cv-02922-TDC
                                       )
OMOYELE SOWORE, *et al.*,              )
                                       )
                    Defendants.        )


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS AMENDED COMPLAINT**


Lisa B. Zycherman (D. Md. Bar # 16969)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax: 202-973-4499
lisazycherman@dwt.com

*Counsel for Defendants Omoyele Sowore and
Sahara Reporters Media Group Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

      A.     Factual Background ............................................................................... 2

           1.     The Parties ................................................................................ 2

           2.     The Maryland Action ............................................................... 3

           3.     The California Action ............................................................... 7

           4.     The September 2017 Article ..................................................... 8

           5.     The October 2017 Article ....................................................... 10

      B.     Procedural Background ......................................................................... 12

ARGUMENT ................................................................................................................ 12

      A.     If a Choice Were Necessary, New York Law Should Be Applied ........... 13

      B.     Plaintiffs' Defamation Claims are Barred by the Fair Report Privilege ... 15

      C.     The October 2017 Article Is Substantially True ...................................... 23

      D.     Plaintiffs' False Light Claim Must Be Dismissed ................................... 25

CONCLUSION ............................................................................................................. 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AIDS Counseling and Testing Ctrs. v. Group W Television*,
    903 F.2d 1000 (4th Cir. 1990) ........................................................................17, 24

*Azimirad v. HSBC Mortg. Corp.*,
    2011 WL 1375970 (D. Md. Apr. 12, 2011) ...............................................................4

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ................................................................................17

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014)....................................................................................24

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
    794 F. Supp. 2d 602 (D. Md. 2011) ..........................................................................4

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975)................................................................................................16

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ..........................................................................12, 25

*Fayetteville Inv'rs v. Commercial Builders, Inc.*,
    936 F.2d 1462 (4th Cir. 1991) ..................................................................................4

*Fornshill v. Ruddy*,
    891 F. Supp. 1062 (D. Md. 1995), *aff'd*, 89 F.3d 829 (4th Cir. 1996) ...................12

*Friedman v. Bloomberg L.P.*,
    884 F.3d 83 (2d Cir. 2017).........................................................................16, 17, 19

*Global Relief Found. v. N.Y. Times Co.*,
    No. 01 C 8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002)..............................14

*Ground Zero Museum Workshop v. Wilson*,
    813 F. Supp. 2d 678 (D. Md. 2011) ........................................................................13

*Gubarev v. BuzzFeed, Inc.*,
    No. 0:17-cv-60426-UU, 2018 U.S. Dist. LEXIS 97246
    (S.D. Fla. June 5, 2018) ..........................................................................................15

*Hodge v. Coll. of S. Md.*,
    121 F. Supp. 3d 486 (D. Md. 2015).........................................................................25

*HQM, Ltd. v. Hatfield*,
    71 F. Supp. 2d 500 (D. Md. 1999) ........................................................................4

*Janklow v. Newsweek, Inc.*,
    788 F.2d 1300, 1306 (8th Cir. 1986)), *aff'd*, 74 N.Y.2d 586 (1989) .......................................23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ........................................................................13

*Liberty Lobby, Inc. v. Rees*,
    852 F.2d 595 (D.C. Cir. 1988) ........................................................................24

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ........................................................................17

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009) ........................................................................12

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) ........................................................................21

*Murray v. United Food & Commercial Workers Int'l Union, Local 400*,
    229 F. Supp. 2d 465 (D. Md. 2003), *aff'd*, 100 F. App'x 165 (4th Cir. 2004) .......................................23

*Nanji v. Nat'l Geographic Soc'y*,
    403 F. Supp. 2d 425 (D. Md. 2005) ........................................................................16, 18

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ........................................................................12

*Papasan v. Allain*,
    478 U.S. 265 (1986) ........................................................................4

*Parrotte v. Lionetti Assocs.*,
    No. ELH-13-2660, 2014 WL 1379790 (D. Md. Apr. 7, 2014) ........................................................................3

*Philips v. Pitt Cty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ........................................................................3

*Piracci v. Hearst Corp.*,
    263 F. Supp. 511 (D. Md. 1966), *aff'd*, 371 F.2d 1016 (4th Cir. 1967) ........................................................................18

*Seymour v. A.S. Abell Co.*,
    557 F. Supp. 951 (D. Md. 1983) ........................................................................18

*Smith v. Washington Suburban Sanitary Comm'n*,
    No. DKC 12-0316, 2012 WL 4863399 (D. Md. Oct. 11, 2012) ........................................................................4

*Tacopina v. O'Keeffe*,
   No. 14 Civ. 8379, 2015 WL 5178405 (S.D.N.Y. Sept. 4, 2015),
   *aff'd*, 645 F. App'x 7 (2d Cir. 2016) ...........................................................................16

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017) ..........................................................................................23

*Trundle v. Homeside Lending, Inc.*,
   162 F. Supp. 2d 396 (D. Md. 2001) ...............................................................................23

*Watkins v. Washington Post*,
   No. PWG-17-818, 2018 WL 805394 (D. Md. Feb. 9, 2018)......................................24, 25

*Wells v. Liddy*,
   186 F.3d 505 (4th Cir. 1999) .........................................................................................13

*Wilkow v. Forbes, Inc.*,
   No. 99 C 3477, 2000 WL 631344 (N.D. Ill. May 15, 2000),
   *aff'd*, 241 F.3d 552 (7th Cir. 2001) ..............................................................................14

*Zimmerman v. Novartis Pharms. Corp.*,
   889 F. Supp. 2d 757 (D. Md. 2012) ...............................................................................14

**State Cases**

*Adelson v. Harris*,
   402 P.3d 665 (Nev. 2017) ..............................................................................................18

*Alf v. Buffalo News, Inc.*,
   100 A.D.3d 1487 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013)...........................21

*Alf v. Buffalo News, Inc.*,
   21 N.Y.3d 988 (2013) .....................................................................................................16

*Batson v. Shiflett*,
   325 Md. 684, 602 A.2d 1191 (1992) ...............................................................................17

*Becher v. Troy Publ'g Co.*,
   183 A.D.2d 230 (3d Dep't 1992) .....................................................................................16

*Bouchard v. Daily Gazette Co.*,
   136 A.D.3d 1233 (3d Dep't 2016) ...................................................................................21

*Chesapeake Publ'g Corp. v. Williams*,
   339 Md. 285, 661 A.2d 1169 (1995) .................................................................... *passim*

*Cholowsky v. Civiletti*,
   69 A.D.3d 110 (2d Dep't 2009) .......................................................................................21

iv

*Curto v. N.Y. Law Journal,*
    144 A.D.3d 1543 (3d Dep't 2016) ...................................................................21

*Glendora v. Gannett Suburban Newspapers,*
    201 A.D.2d 620 (2d Dep't 1994) ....................................................................16

*Gotbetter v. Dow Jones & Co.,*
    259 A.D.2d 335 (1st Dep't 1999) ...................................................................22

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.,*
    49 N.Y.2d 63 (1979) .......................................................................................17

*Koren v. Capital-Gazette Newspapers, Inc.,*
    22 Md. App. 576, 325 A.2d 140 (1974)....................................................18, 23

*McDonald v. E. Hampton Star,*
    10 A.D.3d 639 (2d Dep't 2004) ......................................................................21

*Mountain of Fire & Miracles Ministries v. Oyeyemi,*
    No. B218591, 2012 WL 2373003 (Cal. Ct. App. June 25, 2012)...............7, 8, 9, 19

*Mulder v. Donaldson, Lufkin & Jenrette,*
    161 Misc. 2d 698 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 208 A.D.2d 301
    (1st Dep't 1995) ..............................................................................................20

*Naughton v. Bankier,*
    114 Md. App. 641, 691 A.2d 712 (1997)........................................................13

*Piscatelli v. Van Smith,*
    424 Md. 294, 35 A.3d 1140 (2019) ..................................................... *passim*

*Rodriguez v. Daily News, L.P.,*
    142 A.D.3d 1062 (2d Dep't 2016) ..................................................................19

*Rosenberg v. Helinski,*
    328 Md. 664, 616 A.2d 866 (1992) ..................................................15, 16, 18, 20

*Sandals Resorts Int'l Ltd. v. Google,* Inc.,
    86 A.D.3d 32 (1st Dep't 2011) .......................................................................18

*Sassower v. N.Y. Times Co.,*
    48 A.D.3d 440 (2d Dep't 2008) ......................................................................22

*Sprecher v. Dow Jones & Co.,*
    88 A.D.2d 550 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 862 (1983) .......................22

*Steer v. Lexleon, Inc.,*
    58 Md. App. 199, 472 A.2d 1021 (1984).....................................................18, 20

*Tenney v. Press-Republican*,
    75 A.D.3d 868 (3d Dep't 2010) ................................................................21

*Weiner v. Doubleday & Co.*,
    142 A.D.2d 100 (1st Dep't 1988) .............................................................23

*Zaminski v. Jennings*,
    6 Media L. Rep. (BNA) 1788 (Md. Ct. Spec. App. 1980).......................18

**State Statutes**

Md. Code Ann., Corps. & Ass'ns § 1-101(w) .......................................11, 24

Md. Code Ann., Corps. & Ass'ns § 5-304(b)(3) ..................................11, 25

New York Civil Rights Law § 74 .........................................................16, 19

**Rules**

Federal Rule of Evidence 201(b)(2) .............................................................4

Federal Rule of Civil Procedure 12(b).........................................................4

Federal Rule of Civil Procedure 12(b)(6) ......................................1, 12, 25

**Other Authorities**

"GO Of Mountain Of Fire And Miracles Ministries Daniel Olukoya Falsely
    Claims Residence of US State Of Maryland," available at
    http://saharareporters.com/2017/10/19/go-mountain-fire-and-miracles-
    ministries-daniel-olukoya-falsely-claims-residence-us-state) ........................ *passim*

2 Hon. Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related
    Problems* § 16:2.1 (5th ed.)....................................................................12

"Former Mountain Of Fire Miracles Ministries Pastors Accuses General Oversser
    Olukoya Of Illegal Importation Of Goods In US Property Dispute," available
    at http://saharareporters.com/2017/09/29/former-mountain-fire-miracles-
    ministries-pastors-accuses-general-overseer-olukoya-illegal ......................... *passim*

Restatement (Second) of Conflicts of Law § 146 (1971) ............................14

Restatement (Second) of Conflict of Laws § 150 (1971) ............................13

Defendants Omoyele Sowore and Sahara Reporters Media Group, Inc. hereby move under Rule 12(b)(6) to dismiss in its entirety and with prejudice the Amended Complaint of Plaintiffs Daniel Kolawole Olukoya, Mountain of Fire and Miracles Ministries, and Mountain of Fire and Miracles Ministries, Bowie, Maryland.

## INTRODUCTION

This libel lawsuit is utterly without merit as a matter of law. The articles in suit are garden-variety news reports of publicly filed pleadings and an appellate court decision, and, as such, are privileged fair reports of judicial proceedings under both New York and Maryland law. For this reason alone, Plaintiffs' Amended Complaint must be dismissed.

*First*, the two Articles in suit make immediately clear—starting from their headlines and the embedded copies of judicial records—that they are reporting on judicial proceedings. Both articles expressly reference and state that they are based on judicial records. And all of the statements in suit are either direct quotes or paraphrases from those judicial records.

*Second*, as Plaintiffs themselves acknowledge, the news articles in suit accurately summarize the judicial records on which they report. *See* Amended Complaint ("Am. Compl.") ¶ 19 (Sahara Reporters article "essentially repeats language from the 'First Affirmative Defense'" of a party's publicly filed Answer). Recognizing the need to provide news reports on judicial proceedings with broad protection, the law is well settled that a report on a judicial proceeding need only be "substantially accurate" to fall within the privilege. Each article in suit amply meets this standard.

*Third*, because legal proceedings by their nature abound with conflicting charges and countercharges, the fair report privilege applies to reporting on allegations contained in public court filings even if those allegations turn out to be false. Thus, although Plaintiffs implausibly

1

allege that Defendants should have included in their news reports countervailing evidence from **non-public** discovery materials, Defendants had no obligation, let alone the ability, to do so. And Plaintiffs' assertion that the articles in suit should have been updated to report on **subsequent** events in the judicial proceedings is meritless under established precedent because such an obligation would impose an unconstitutional intrusion into reporters' and publishers' editorial discretion, contrary to Maryland law, New York law, and the First Amendment.

In sum, the Articles are quintessential fair reports of judicial proceedings—no different from what news organizations around the country publish every single day—and, as such, are absolutely privileged.

**Fourth**, the documentary evidence submitted in court proceedings also establishes that, as reported in the second article in suit, Plaintiff Olukoya falsely claimed Maryland residency in Articles of Incorporation that were filed with the Maryland Department of Assessment and Taxation.  The law is settled that "substantial truth" defeats a libel claim; and here it is indisputably true that Olukoya (a resident of Nigeria) listed himself in the subject Articles of Incorporation as being a Baltimore resident and signed the Articles of Incorporation as a "Resident Agent" in Maryland.

**Lastly**, the same reasons that require dismissal of Plaintiffs' libel claims as a matter of law, likewise compel dismissal of their tagalong claim for false light invasion of privacy.

## BACKGROUND

### A.    Factual Background

#### 1.    The Parties

Plaintiff Daniel Kolawole Olukoya resides in Nigeria, and is the founder and "General Overseer" of Mountain of Fire and Miracles Ministries ("MFM International").  Am. Compl.

Caption, ¶ 1.  MFM International is an international ministry, based in Yaba, Nigeria, that has multiple branches in the United States, including in Maryland.  Am. Compl. ¶ 1.  Plaintiff Mountain of Fire and Miracle Ministries, Inc. ("MFM USA") is the U.S. headquarters of MFM International and is incorporated in Nevada with an unknown principal place of business.  *Id.* at Caption, ¶ 1.  Plaintiff Mountain of Fire and Miracles Ministries, Bowie, Maryland ("MFM Bowie") is incorporated in Maryland, with its principal place of business in Bowie, Maryland. *Id.* at Caption.

Defendant Sahara Reporters Media Group Inc., doing business as Sahara Reporters, is a New York corporation with its principal place of business in New York, New York.  *Id.* at Caption.  Defendant Omoyele Sowore is the founder of Sahara Reporters and resides in New Jersey.  *Id.* ¶ 2.  Sahara Reporters is an online news site that publishes articles and commentary with an emphasis on current events affecting Nigeria.  *Id.*

### 2.    The Maryland Action

In June 2016, MFM International and MFM USA brought suit in the Circuit Court for Prince George's County (Case No. CAL 16-26532) against Christ the Truth Ministries, Inc., of Bowie, Maryland; Mountain of Fire and Miracles Ministries Maryland, Inc., a putative Maryland religious corporation purportedly established by MFM International; Lawrence Olukunmi Adetunji, the pastor of the Maryland MFM outpost; and twelve other individuals (the "Maryland Action").  *See* Declaration of Marni Shapiro ("Shapiro Decl.") Exs. 1-2; Am. Compl. ¶ 16 (summarizing allegations in complaint in Maryland Action).[1] In their complaint in the Maryland

---

[1] A court reviewing a motion to dismiss "may properly consider documents 'attached or incorporated into the complaint,' as well as documents attached to the defense motion, 'so long as they are integral to the complaint and authentic.'"  *Parrotte v. Lionetti Assocs.*, No. ELH-13-2660, 2014 WL 1379790, at *3 (D. Md. Apr. 7, 2014) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*,

Action, the plaintiffs alleged that the defendants had conspired to unlawfully take church property, including real property, tangible personal property, and intangible property such as bank accounts and investment accounts, that otherwise was held in trust for MFM International, Shapiro Decl. Ex. 1 ¶¶ 6-10, 27-32, and that the defendants had reformed the Maryland MFM congregation as Christ the Truth Ministries in violation of controlling agreements with MFM International, *id.* ¶¶ 33-35.

After unsuccessfully seeking to dismiss the Maryland Action, *see* Shapiro Decl. Ex. 2 at 5 (Oct. 12, 2016 Order of Court), the defendants eventually filed an Amended Answer and Amended Counterclaims (the "Amended Answer") in late January 2017.[2]  *See* Shapiro Decl. Ex. 2 at 7 & Ex. 3; Am. Compl. ¶ 19.  The defendants' Amended Answer generally denied all allegations in the complaint, asserted eleven affirmative defenses, and asserted counterclaims averring that any trust between defendants and MFM International had been effectively revoked

---

572 F.3d 176, 180 (4th Cir. 2009)); *see HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999) ("The [United States Court of Appeals for the] Fourth Circuit and courts in this district have also recognized an exception for written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action.").  Here, since the Amended Complaint repeatedly refers to pleadings and proceedings in the Maryland Action (*see* Am. Compl. ¶¶ 16, 17, 19-24, 28) those pleadings and proceedings may be considered by this Court at the Rule 12(b) pleading stage.  "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court may properly take judicial notice of matters of public record." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation and internal quotation marks omitted).  A court may thus take judicial notice of docket entries, pleadings, and papers in other cases without converting a motion to dismiss into a motion for summary judgment. *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Smith v. Washington Suburban Sanitary Comm'n*, No. DKC 12-0316, 2012 WL 4863399, at *4 n.4 (D. Md. Oct. 11, 2012) (taking judicial notice, as a "matter of public record," of the decision of the Maryland OAH upholding plaintiff's termination).  *See also* Fed. R. Evid. 201(b)(2).

[2]  In their Amended Complaint in this action, Plaintiffs reference and quote the same pleading, but allege it was filed February 2, 2017.  *See* Am. Compl. ¶ 19.  The Amended Answer is in fact dated January 30, 2017, and the docket sheet shows it was filed the same date.  Where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Azimirad v. HSBC Mortg. Corp.*, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

and that MFM International had been unjustly enriched by $700,000 in contributions from the defendants' parishioners as a result of MFM International's alleged "campaign of coercion." Shapiro Decl. Ex. 3 at 7-8.  Of relevance here, the Maryland Action defendants asserted in their First Affirmative Defense:

> Upon information and belief, Defendants allege that the Plaintiffs [MFM International and MFM USA] have willfully and intentionally evaded U.S. Customs Service duties and have evaded tax payments to the United States government. These illegal activities were carried out for many years. The nature of the illegal activity stems from the fact that Plaintiffs would ship prayer books (specifically, "70 Days Prayer & Fasting and Pray Your Way Into [current year]") to various U.S.-based MFM branches with a cover letter categorizing the books as "donations" to be distributed to local parishioners. However, once delivered to the United States, instructions were then emailed to the U.S. pastors by MOFMM International and/or MOFMM USA instructing them of the price they must charge parishioners in selling these books. The pastors were then instructed to remit the earnings of their sales to MOFMM International. Although this practice has been going on for many years, on or about 2013, Plaintiffs started shipping their books directly to U.S. Customs in Baltimore, along with the cover letter stating that the books were "donations."

> When they became aware of Plaintiffs' illegal activities, Pastors Lawrence and Ronke Adetunji (having no power over Plaintiffs to influence or change their behavior) had to sever all ties in order to terminate their (Defendants') unwitting participation in Plaintiffs' illegal actions. Pastors Lawrence and Ronke Adetunji did not become aware of the illegality of their actions until 2015. Soon thereafter they began the process of severing ties with Plaintiffs, including filing their restatement of the Articles of Amendment and Restatement for a Religious Corporation on or about December 18, 2015 and eventually thereafter abandoned the defunct MOFMM Maryland Inc.

Id. at 2-3.  See also Am. Compl. ¶¶ 19-20 (quoting from First Affirmative Defense in Maryland Action).

The Maryland Action was set for a jury trial to begin October 23, 2017.  Shapiro Decl. Ex. 2 at 13. On October 2, 2017, the defendants moved to compel Olukoya's deposition

5

testimony. Shapiro Decl. Ex. 2 at 12.  In their motion to compel, defendants noted that MFM

International had refused to submit Olukoya to deposition, even after the defendants had offered

to "pay all expenses of Dr. Olukoya for his travel (airfare, hotel and transfers) to Maryland to

give his deposition," and asserted that his testimony was essential to their defense and

counterclaims.  Shapiro Decl. Ex. 4 at 1-2; *see also* Am. Compl. ¶¶ 39-40.  According to the

defendants, MFM International refused to comply with their deposition subpoena on grounds

that Olukoya was "not a party" and "resides in Lagos, Nigeria," beyond the court's jurisdiction

for service of process.  Shapiro Decl. Ex. 4 at 2.  The defendants further stated in their motion to

compel that:

> Dr. Olukoya's testimony is crucial in this case for the reason that
> he is the signatory on at least three documents that are central to
> Defendants' defenses in this case. Those documents are described
> below. In addition, Dr. Olukoya is the Resident Agent for Service
> for Mountain of Fire and Miracles Ministries, Baltimore as shown
> in that Church's Articles of Incorporation attached hereto as
> Defendants' Exhibit 8 [sic] [9]. As Resident Agent for Service in
> this State of Maryland, Dr. Olukoya is subject to Maryland State
> Courts jurisdiction and he is not beyond service of process by this
> court.
>
> Defendants urge the Court, pursuant to the authority conferred by
> Rule 2-514, to either order Dr. Olukoya to testify at trial in this
> case, which is scheduled to commence on October 23, 2017 or
> prohibit Plaintiffs from referring to or using at trial any documents
> Dr. Olukoya purportedly signed, which documents are identified
> below.

*Id*.  The defendants annexed to their motion to compel as Exhibit 9 a copy of the "Religious

Corporation Articles of Incorporation" for an entity titled "Mountain of Fire and Miracles

Ministries Baltimore, Maryland, Incorporated" ("MFM Baltimore").   In those Articles of

Incorporation, Olukoya is twice listed as having his address at "7102 Yataruba Dr., Baltimore,

MD," Olukoya is designated as the "resident agent" of MFM Baltimore; and Olukoya signed the

document as MFM Baltimore's "resident agent."  Shapiro Decl. Ex. 4.

According to the Motion to Compel, the "grounds" MFM International and MFM USA "cited in refusing to produce Dr. Olukoya" were that Olukoya "resides in Lagos, Nigeria" and that, as such, he was "beyond service of process" by the court in the Maryland Action.  Shapiro Decl. Ex. 4 at 2.  *See also* Am. Compl. ¶ 40 (acknowledging that MFM International and MFM USA objected to the subpoena because Olukoya "is not a citizen or resident of the United States.").[3]

### 3.      The California Action

In May 2006, Mountain of Fire and Miracles Ministries, a California nonprofit corporation ("MFM California"), commenced in Superior Court for the County of Los Angeles, California, a lawsuit against Ade Oyeyemi, an MFM pastor.  *Mountain of Fire & Miracles Ministries v. Oyeyemi*, No. B218591, 2012 WL 2373003, at *1 (Cal. Ct. App. June 25, 2012) (the "California Action").  In its complaint, MFM California alleged that Pastor Oyeyemi "had engaged in misconduct while acting as a fiduciary of [MFM California], including diverting its members and assets to a new church."  *Id*.  The trial court concluded that MFM California lacked standing to pursue the action and MFM's Hayward, California chapter ("MFM Hayward") was substituted as plaintiff.  *Id*. at *2.  Thereafter, MFM Hayward filed an amended complaint for conversion and interference with economic relations, alleging that Pastor Oyeyemi had converted MFM Hayward's property to establish a new church and that, in establishing the new church, Pastor Oyeyemi had improperly diverted MFM Hayward's members and their donations to the

---

[3] After the first article in suit was published, the court in the Maryland Action denied the motion to compel.  *See* Shapiro Decl. Ex. 2 at 13.  Also after the first article in suit, the court issued its ruling June 29, 2018, entering judgment in favor of the plaintiffs on all but one of their eight counts, entering judgment for counter-defendants on the counter-claims, assessing costs against the defendants, and otherwise denying the plaintiffs punitive damages.  *See* Shapiro Decl. Ex. 2 at 15-16; Ex. 5.

new church.  *Id*.  Following a jury trial, judgment was entered against Pastor Oyeyemi on findings that he had engaged in conversion and negligent interference with prospective economic relations, and MFM Hayward was awarded $99,786.78 in damages.  *Id*. at *4.

Pastor Oyeyemi appealed the judgment, arguing that MFM Hayward lacked standing to assert the claims and that MFM Hayward had no property interest in MFM International's assets, which MFM Hayward sought to recover at trial.  Pastor Oyeyemi further argued that MFM Hayward failed to sufficiently specify the funds he allegedly converted or the independently wrongful conduct required for negligent interference with prospective economic relations.  *Id*. at *5.  In a June 25, 2012 decision, the California Court of Appeal held that, while MFM Hayward had the necessary standing to bring its claims, those claims were "defective insofar as they were predicated on [MFM California's] assets and income," and MFM Hayward had failed to show that it "had any property interest in [MFM California's] assets and prospective income."  *Id*.  The appellate court accordingly reversed the trial court judgment and remanded for a new trial on MFM Hayward's claim for conversion, "limited to whether Pastor Oyeyemi converted bank account funds entrusted to him by [MFM International]" under a November 2002 agreement prior to the organization's incorporation as a non-profit in the State of California.  *Id*. at *13; *see also id*. at *1.

### 4.     The September 2017 Article

On September 29, 2017, Sahara Reporters published an article describing the then-status of the Maryland and California Actions (the "September 2017 Article").  The article, titled "Former Mountain of Fire Miracles Ministries Pastors Accuses General Overseer Olukoya Of Illegal Importation of Goods In US Property Dispute," Shapiro Decl. Ex. 6, begins with the lede: "Daniel Olukoya, General Overseer of the Mountain of Fire and Miracles Ministries (MFM), is

in the spotlight in a US court after his group, one of Nigeria's foremost Pentecostal churches, dragged some former pastors and members to court over monetary and property disputes." The September 2017 Article goes on to summarize the allegations made by MFM International and MFM USA in their complaint "filed in the Circuit Court for Prince George's County of Maryland, U.S.A., (Case No. CAL16-26532)."  *Id.* at 1, 2 (noting that the Maryland Action Complaint "claims that the property acquired with the contributions and offerings of the members of MFM in Bowie … are property of MFM headquarters by way of trust" and that Pastor Adetunji "was under an obligation to hand over the properties and funds to MFM headquarters").  The September 2017 Article also recounts that, "in their response," the defendants "allege that MFM International was in the practice of knowingly and deliberately making false claims to evade U.S. Customs duties and taxes on books exported from Nigeria to U.S."  *Id.* at 2.  The article, published online at http://saharareporters.com/2017/09/29/former-mountain-fire-miracles-ministries-pastors-accuses-general-overseer-olukoya-illegal, includes full copies of the plaintiffs' Complaint and the defendants' Amended Answer and Counterclaims for readers to review using embedded SCRIBD software.  The September 2017 Article makes clear that the parties' claims and counterclaims had not yet been decided by the court, explaining that "[t]he case comes up for hearing on October 14, 2017."  Shapiro Decl. Ex. 6 at 3.

The September 2017 Article also briefly references "a similar action before the Superior Court of Los Angles, California, against Ade Oyeyemi, a former MFM pastor (Los Angeles County Super. Ct. No. BC 352398)."  Shapiro Ex. 6 at 3.  The article notes that "[t]he Fourth Division of the Second Appellate District of the California State Court of Appeal ultimately decided the case in favor of Pastor Oyeyemi."  *Id.*

### 5.     The October 2017 Article

On October 19, 2017, Sahara Reporters published an article titled: "GO Of Mountain Of Fire And Miracles Ministries Daniel Olukoya Falsely Claims Residence of US State Of Maryland" (the "October 2017 Article"). Shapiro Decl. Ex. 7 (available at http://saharareporters.com/2017/10/19/go-mountain-fire-and-miracles-ministries-daniel-olukoya-falsely-claims-residence-us-state). The October 2017 Article reports that, "in the filings before the Circuit Court for Prince Georges' County," the defendants filed a "Motion to compel the testimony of Pastor Olukoya (see a copy of the Motion below)." *Id.* at 2. The October 2017 Article further reports that, in their motion to compel, "defendants stated that they requested [Olukoya's] presence at deposition or trial via subpoena served through the plaintiff's (Mountain of Fire and Miracles Ministries International's) attorney, but the plaintiff refused to produce Olukoya for that purpose." *Id*. at 2.  The article goes on to quote from the motion to compel: "'The purported grounds that plaintiffs [MFM International and MFM USA] have cited in refusing to produce Olukoya is that he is "not a party" to the litigation and that he "resides in Lagos, Nigeria" and is therefore beyond service of process by the court,' the defendants' motion further states." *Id.*  The October 2017 Article further states that, "[a]s of the time of filing this report, the plaintiffs, MFM International have not filed a response to the defendants' motion." *Id*. at 3.

The article also reports that, in their motion to compel, the defendants' point out that "Olukoya is a Resident Agent for Service for Mountain of Fire and Miracles Ministries, Baltimore, as demonstrated in that Church's Articles of Incorporation." *Id*. at 3.  The October 2017 Article includes an embedded copy of the motion to compel for readers to review, as well as images of two exhibits that were attached to the motion, including the first page of the

"Religious Corporation Articles of Incorporation" for MFM Baltimore. Based on the MFM Baltimore Articles of Incorporation appended to the motion to compel—in which Olukoya is twice listed as having a Baltimore address, is named as the "resident agent" of MFM Baltimore, and signs as "registered agent" in Maryland—the Article reports that "[i]n the Articles of Incorporation filed with the State of Maryland Department of Assessment and Taxation, Olukoya claimed to be a Resident Agent for Service for MFM Baltimore" and "personally signed the Articles in that capacity." *Id*. at 1.   The article further notes that "[t]he laws of the State of Maryland require all corporations or organizations applying for registration in the State to designate a person or organization, who must be a legal resident" to receive notices on behalf of the organization. *Id.   See also* Md. Code Ann., Corps. & Ass'ns § 1-101(w) ("'Resident agent' means an individual ***residing in this State or a Maryland corporation*** or limited liability company whose name, address, and designation as a resident agent are filed or recorded with the Department in accordance with the provisions of this article.") (emphasis added); Md. Code Ann., Corps. & Ass'ns § 5-304(b)(3) ("The articles of incorporation [for a religious corporation] shall contain: … (3) The name and address of the resident agent of the church.").

The October 2017 Article notes that "Olukoya is not and has never been a legal resident of the State of Maryland" and that, in the Articles of Incorporation, Olukoya 'falsely affirmed himself to be a legal resident'" of Maryland. *Id*. at 1-2; *see also* Shapiro Decl. Ex. 4.  The article further notes that "the pastor's false declaration he filed with the State of Maryland Department of Assessment and Taxation could result in charges of perjury, depending on whether or not the declaration was made on oath." *Id*. at 4.

**B.     Procedural Background**

Plaintiffs filed this action on September 24, 2018, asserting claims for defamation, defamation *per se*, and false light. Following Defendant's pre-motion letter to the court outlining grounds for dismissal, Plaintiffs filed an Amended Complaint.  The February 1, 2019 Amended Complaint (ECF No. 21) raises the same three counts.

## ARGUMENT

Courts have recognized that early adjudication is particularly appropriate in defamation suits, where the cost of defending even a meritless claim can chill First Amendment rights.  *See Fornshill v. Ruddy*, 891 F. Supp. 1062, 1074 (D. Md. 1995), *aff'd*, 89 F.3d 829 (4th Cir. 1996). Early dismissal of meritless claims, such as Plaintiffs', is particularly important in the defamation context because unnecessary discovery and defense costs, not to mention the simple threat of future libel claims, burden free speech. Indeed, "[s]ummary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 377-78 (D.C. Cir. 2013) (affirming Rule 12(b)(6) dismissal of libel claim) (citation omitted).  *See also McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

As one leading treatise has noted, dismissal of defamation suits for failure to state a claim "occurs with relative frequency" because "unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage.  He or she may assess it upon a motion to dismiss, firsthand and in context." 2 Hon. Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems* § 16:2.1 at 16-3 – 16-4 (5th ed.). Where, as here, the challenged statements constitute privileged fair reports

of judicial proceedings, courts routinely dismiss such actions on motions to dismiss. *See, infra* note 7.

## A.      If a Choice Were Necessary, New York Law Should Be Applied

In a diversity action (as this action is), this Court must apply the choice-of-law principles of Maryland. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delecti commissi*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712 (1997). Generally, "[i]n defamation actions, the location of the harm is the place where the defamatory statements were published to third parties." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 698 (D. Md. 2011). However, where, as with the online articles in suit, a communication is published simultaneously in multiple states, application of Maryland's traditional place of harm rule "becomes cumbersome, if not completely impractical." *Wells v. Liddy*, 186 F.3d 505, 527 (4th Cir. 1999).[4] "Because the *lex loci delicti* rule fails to reach a satisfactory result on multistate defamation issues, other district courts in this jurisdiction have ruled that the Court of Appeals of Maryland would adopt the rule stated in the Restatement (Second) of Conflict of Laws," *Ground Zero*, 813 F. Supp. 2d at 699 (collecting cases), which looks to the state with the most "significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 150 (1971).

"In most cases, the plaintiff's state of residence bears the most significant relationship to the incident and parties because that is where the plaintiff's reputation suffers the most." *Ground*

---

[4] *See* Am. Compl. ¶¶ 44 (alleging reputational harm to Olukoya, who resides in Nigeria), 45 (alleging reputational harm to MFM [USA] and MFM-Bowie "not only in the community but around the world").

*Zero*, 813 F. Supp. 2d at 699.  However, the "significant relationship" approach "allows for 'dépeçage,' such that a court can apply different state laws to different issues in a single case." *Zimmerman v. Novartis Pharms. Corp.*, 889 F. Supp. 2d 757, 761 (D. Md. 2012). *See* Restatement (Second) of Conflicts of Law § 146 (1971) ("the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship"); *id.* § 145 cmt. d ("[C]ourts have long recognized that they are not bound to decide all issues under the local law of a single state.").  Thus, the only conflict of law question potentially raised by this motion is which state law should apply to Defendants' affirmative defenses.  The Court need not decide which law should define the elements of Plaintiffs' defamation claim.

    While the issue has not arisen in Maryland, on point decisions from courts in other jurisdictions that follow the same Restatement test make it clear that New York law should apply to Defendants' fair report privilege defense. In *Wilkow v. Forbes, Inc.*, No. 99 C 3477, 2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001), for example, an Illinois plaintiff sued a New York-based publisher for defamation over a nationally published magazine article.  The court held that Illinois law applied to "the defamation at issue," but that the law of the defendant's domicile—New York—applied to the fair report privilege defense.  It noted that "[t]he issue of whether a statement is defamatory or invades the right to privacy is distinct [for choice of law analysis] from the issue of whether that statement is privileged."  *Id.* at *5. The court explained that "[t]he fair reporting privilege is meant to protect speakers, not provide a remedy to plaintiffs," and the fact that the publishing decisions were made in New York gave that state "a more substantial relationship with the conduct at issue here."  *Id.* at *7.  *See also Global Relief Found. v. N.Y. Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *11 (N.D. Ill.

Sept. 11, 2002) (Illinois law applied to the underlying defamation claim while "the law of California will apply to defenses to defamation").

Similarly, in *Gubarev v. BuzzFeed, Inc.*, No. 0:17-cv-60426-UU, 2018 U.S. Dist. LEXIS 97246, (S.D. Fla. June 5, 2018), the Florida federal court applied New York law to the defendants' affirmative defenses—including their fair report privilege defense—because "the affirmative defenses asserted by Defendants," who wrote, published, and edited the publication in suit in New York, "exist to protect speakers, not to provide Plaintiffs a remedy." *Id.* at \*14. Because "the decision to publish … was made in New York, … New York has a strong interest in determining the applicability of the affirmative defenses." *Id.* So too here. Defendant Sahara Reporters is based in New York where the articles in suit were published. *See* Am. Compl. ¶ 2. Since New York has "a more significant relationship" to the issues presented by Defendants' affirmative defenses than does Maryland (where only one Defendant even resides), New York law should apply.

In any event, the legal elements of the fair report privilege and of the substantial truth defense are virtually identical under Maryland and New York law.

**B.     Plaintiffs' Defamation Claims are Barred by the Fair Report Privilege**

Maryland has long recognized a privilege "to report on legal proceedings, even if the story contains defamatory material, as long as the account is fair and substantially accurate." *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 296-97, 661 A.2d 1169, 1174 (1995); *see also Piscatelli v. Van Smith*, 424 Md. 294, 309, 35 A.3d 1140, 1149 (2019) (citation omitted). *Rosenberg v. Helinski*, 328 Md. 664, 677, 616 A.2d 866, 872-73 (1992) ("Reports of in-court proceedings containing defamatory material are privileged if they are fair and substantially correct or substantially accurate accounts of what took place."). This privilege is also referred to

15

as the "fair report" privilege. First Amendment principles underlie this privilege,[5] which "reaches not only comprehensive accounts of judicial proceedings, but [also] accounts focusing more narrowly on important parts of such proceedings." *Chesepeake Publ'g Corp.*, 339 Md. at 297, 661 A.2d at 1775 (citation omitted). Similarly, "New York courts adopt a 'liberal interpretation'" of the state's statutory fair report privilege "so as to provide broad protection to news accounts of judicial ... proceedings." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93-94 (2d Cir. 2017) (quoting *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233 (3d Dep't 1992)).[6] Maryland and New York courts applying the fair report privilege routinely grant pre-answer motions to dismiss libel actions on the basis of this privilege.[7]

Plaintiffs' allegation that Defendants published the articles in suit with "actual malice," Am. Compl. ¶¶ 30, 41, 51, 59, is legally irrelevant to application of the fair report privilege under New York law, since the privilege "is absolute, and is not defeated by the presence of malice or bad faith." *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620 (2d Dep't 1994); *see also Alf v. Buffalo News, Inc.*, 21 N.Y.3d 988, 990 (2013).  Similarly, under Maryland law, the fair report privilege is "somewhat broader in its scope than other conditional privileges."

---

[5] *Rosenberg*, 328 Md. at 679-80, 616 A.2d at 873 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The special protection given to fair and accurate reports of judicial proceedings rests on a fundamental premise: 'A trial is a public event.  What transpires in the court room is public property....  Those who see and hear what transpired can report it with impunity.'") (internal quotation marks omitted); *see also Piscatelli*, 424 Md. at 309, 35 A.3d at 1149 ("The privilege arises from the public's interest in having access to information about official proceedings and public meetings.").

[6] New York Civil Rights Law Section 74 provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding ...."

[7] *E.g.*, *Friedman*, 884 F.3d at 93-94; *Tacopina v. O'Keeffe*, No. 14 Civ. 8379, 2015 WL 5178405, at *6-7 (S.D.N.Y. Sept. 4, 2015), *aff'd*, 645 F. App'x 7 (2d Cir. 2016); *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 430-35 (D. Md. 2005) (granting motion to dismiss based on fair report privilege).

*Piscatelli*, 424 Md. at 309 n.3, 35 A.3d at 309 n.3.  It "exists even if the reporter of defamatory statements made in court believes or knows them to be false." *Chesapeake Publ'g Corp.*, 339 Md. at 297, 661 A.2d at 1175.  As under New York law, in Maryland, the privilege is lost "***only*** if the report fails the test of fairness and accuracy." *Id.* (emphasis added); *Piscatelli*, 424 Md. at 309-10 & n.3, 35 A.3d at 1149.[8]

Several principles inform the inquiry into whether a report is fair and "substantially accurate."  Most importantly, "substantial accuracy" means what it says—it does not mean perfect accuracy.  As long as the report communicates "the gist" or "the sting" of what is alleged in a pleadinag or contained in a court decision, it is substantially accurate even if it contains some errors.  *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1212 (1992) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)); *AIDS Counseling and Testing Ctrs. v. Group W Television*, 903 F.2d 1000, 1004 (4th Cir. 1990); *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (1979) ("For a report to be categorized as 'fair and true' within the meaning of the statute, … it is enough that the substance of the article be substantially accurate.").  A report communicates "the gist" as long as the report would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced," even if there are some discrepancies.  *Batson*, 325 Md. at 726, 602 A.2d at 1212; *see also Friedman*, 884 F.3d at 94 (report is considered substantially accurate "if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth") (citation omitted). Substantial accuracy is measured by considering the report as a whole, rather than one or two sentences in isolation.  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d

---

[8] Accordingly, none of Plaintiffs' allegations that the Defendants published the Articles in suit with actual malice undermine application of the fair report privilege under Maryland or New York law.

1087, 1098 (4th Cir. 1993); *Koren v. Capital-Gazette Newspapers, Inc.*, 22 Md. App. 576, 585, 325 A.2d 140, 145 (1974); *Nanji*, 403 F. Supp. 2d at 433; *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md. 1983).

Here, applying the fair report privilege is a straightforward exercise. Defendants' articles lie at the very heart of the fair report privilege—a straightforward recounting of pleadings, a motion, and an appellate decision entered in judicial proceedings.  The Maryland and California Actions are exactly the sort of "legal and official proceeding[]" to which the privilege attaches. *Piscatelli*, 424 Md. at 309, 35 A.3d at 1149.  The Court need only compare the articles with the proceedings they reported on to determine whether the articles are a substantially accurate account.[9]  The Court may undertake this inquiry now, upon a motion to dismiss, because the only materials outside the pleadings required to determine whether the privilege applies are judicial records of which this Court may take judicial notice.[10]

The privilege requires dismissal of the Amended Complaint since the articles in suit are substantially accurate reports of the MFM litigations.[11]  Indeed, the Amended Complaint openly

---

[9] In the vast majority of cases, Maryland courts have found that this exercise by the Court resolves the issue.  *See, e.g.*, *Piscatelli*, 424 Md. at 312-13, 35 A.3d at 1151; *Chesapeake Publ'g Corp.*, 339 Md. at 296-97; *Rosenberg*, 328 Md. at 678, 616 A.2d at 872-73; *Steer v. Lexleon, Inc.*, 58 Md. App. 199, 472 A.2d 1021 (1984); *Zaminski v. Jennings*, 6 Media L. Rep. (BNA) 1788 (Md. Ct. Spec. App. 1980); *Koren*, 22 Md. App. 576, 581, 325 A.2d 140, 143 (1974); *Nanji*, 403 F. Supp. 2d at 425; *Seymour*, 557 F. Supp. at 955; *Piracci v. Hearst Corp.*, 263 F. Supp. 511 (D. Md. 1966), *aff'd*, 371 F.2d 1016 (4th Cir. 1967).

[10] *Nanji*, 403 F. Supp. 2d at 430 (holding that it was appropriate to consider public documents, including court transcripts, in deciding motion to dismiss on grounds of fair report privilege).  *See also Piscatelli*, 424 Md. at 312, 35 A.3d at 1151 ("Piscatelli did not adduce facts tending to show that the report was unfair and inaccurate; therefore, no abuse of the fair reporting privilege was presented to be judged by a fact-finder.").

[11] Moreover, in the digital age providing hyperlinks to the sources of reports about official proceedings suffices to report about them.  *Adelson v. Harris*, 402 P.3d 665, 666 (Nev. 2017) ("[A] hyperlink to source material about a judicial proceeding may suffice as a report within the common law fair report privilege.").  *See also Sandals Resorts Int'l Ltd. v. Google,* Inc., 86

concedes that statements in the articles were accurate accounts of the allegations made in court pleadings.  Am. Compl. ¶¶ 19 ("The story and statement by Sahara *was lifted from* the Amended Answer and Counter-Claim of the litigation Defendants [in the MFM Maryland Action]" and "[i]t *essentially repeats language* from the 'First Affirmative Defense.'"), 42 ("Defendants failed to make any real effort to learn or to report the facts, *but rather adopted statements* of untrue and unfounded allegations of litigants contrary to Dr. Olukoya, MFM, and MFM, Nevada.") (emphasis added).  That should end the matter.  Nonetheless, even beyond Plaintiffs' admissions, it is evident that the September 2017 Article accurately recounted the allegations of customs/tax evasion lodged against Plaintiffs in the publicly filed Amended Answer in the Maryland Action.  Similarly, since the California Appellate Division did indeed reverse the judgment against Oyeyemi and remand the case for a new trial (*Mountain of Fire & Miracles Ministries*, 2012 WL 2373003, at *13), the September 2017 Article was entirely accurate in reporting that "[t]he Fourth Division of the Second Appellate District of the California State of Court Appeals ultimately decided the case in favor of Pastor Oyeyemi."  Shapiro Decl. Ex. 6 at 3.

The fact that Plaintiffs believe the allegations leveled against them in open judicial proceedings are false (or unsubstantiated) has no bearing on the press's right to report on what is said and done in the public courts without fear of liability.  *Friedman*, 871 F.3d at 195; *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1064 (2d Dep't 2016) ("[Section 74] was designed precisely to protect the publisher of a fair and true report from liability for just such an error and to relieve it of any duty to expose the error through its own investigation.") (citation

---

A.D.3d 32, 45 (1st Dep't 2011) ("the e-mail is supported by links to the writer's sources").  Here, the articles in suit embed the judicial records upon which they are reporting.

omitted); *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705 (Sup. Ct. N.Y. Cty. 1994) ("The question is not whether or not the statement [in a news article paraphrasing a litigant's contentions] is 'true.' The question is whether it is a substantially accurate description of the claims made in the … proceeding, and the answer is yes."), *aff'd*, 208 A.D.2d 301 (1st Dep't 1995). The point of the privilege is that it applies regardless of whether the plaintiff alleges that something said about him in the proceeding was false and defamatory. Otherwise, journalists could not report about official proceedings because they routinely contain defamatory statements. *Cf. Steer*, 58 Md. App. 199, 472 A.2d 1021.

As to the October 2017 Article, Plaintiffs' theory appears to be that even if that article was a fair and accurate report on the Motion to Compel, they can deny Defendants the protection of the privilege by alleging that Defendants knew the information they got from the Motion to Compel was false. *See* Am. Compl. ¶¶ 38, 41. But, as noted above, that is simply not how the fair report privilege works. In fact, the Maryland Court of Appeals has expressly held that a defendant's alleged knowledge of falsity is irrelevant to whether the privilege applies because "[t]he privilege exists even if the reporter of defamatory statements made in court believes or knows them to be false; the privilege is abused only if the report fails the test of fairness and accuracy." *Chesapeake Publ'g Corp.*, 339 Md. at 297, 661 A.2d at 1175; *see also Piscatelli*, 424 Md. at 309 n.3, 35 A.3d at 1149 n.3 ("In *Rosenberg* … we adopted the modern view regarding the fair reporting privilege, which 'discards the search for malice, and simply requires that the report be fair and substantially correct.'"). So too under New York law, where the fair report privilege is absolute. *See supra* 16. Moreover, based on the documentary evidence appended to the Motion to Compel and explicitly referenced in the October 2017 Article (*i.e.*, the listing in the MFM Baltimore Articles of Incorporation of Olukoya having a Baltimore address and his

designation/signature as MFM Baltimore's "resident agent" in Maryland), the statement that Olukoya falsely represented himself to have a Maryland residence is entirely true, *see* Shapiro Decl. Ex. 4, presenting a separate ground for dismissal. *See infra* 23-25.

Plaintiffs also plead frivolous alleged omissions in the articles, including failure to refer to discovery materials that were ***not available*** on the public docket, *compare* Am. Compl. ¶¶ 21-26 *with* Shapiro Decl. Ex. 2, and events that transpired ***after*** the Articles were published, *compare* Am. Compl. ¶¶ 27-28 *with* Shapiro Decl. Ex. 2 & Ex. 5. Moreover, there is no obligation for a news article to tell all sides of a story to be substantially accurate. *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009); *Curto v. N.Y. Law Journal*, 144 A.D.3d 1543, 1544 (3d Dep't 2016); *see also Alf v. Buffalo News, Inc.*, 100 A.D.3d 1487, 1489 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013); *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234-35 (3d Dep't 2016). Indeed, notwithstanding a libel plaintiff's contention that an "article … is misleading because it focuses on only one aspect of the … lawsuit," the fair report privilege fully applies so long as—like here—"the basis for each of the contested statements may be found in" the proceeding being reported. *Tenney v. Press-Republican*, 75 A.D.3d 868, 868-69 (3d Dep't 2010); *see also McDonald v. E. Hampton Star*, 10 A.D.3d 639, 639-40 (2d Dep't 2004) ("fail[ure] to report" additional information favorable to plaintiff does not defeat privilege).

This is consistent with prevailing First Amendment principles, which recognize that publishers' editorial choices are protected. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment."). Indeed, courts are unreceptive to claims that an article is not "fair and balanced," since "whether

or not a particular article constitutes unbalanced reporting is essentially a matter involving editorial judgment and is not actionable." *Gotbetter v. Dow Jones & Co.*, 259 A.D.2d 335, 335-36 (1st Dep't 1999) (quoting *Sprecher v. Dow Jones & Co.*, 88 A.D.2d 550, 551 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 862 (1983)).  Thus, even when a plaintiff claims that a report of official proceedings "fail[s] to include and recount certain information as desired by the plaintiff," courts hold that "editorial decisions on the choice of material to go into a newspaper, and the decision to omit certain details, are not actionable." *Sassower v. N.Y. Times Co.*, 48 A.D.3d 440, 441–42 (2d Dep't 2008) (internal citations and quotation marks omitted).

Finally, the Amended Complaint appears to assert that even when a news article accurately reports on judicial proceedings, the fair report privilege should not apply if the newspaper does not continue devoting space in each subsequent issue to cover any exculpatory evidence that later emerges in the proceeding ***after*** the article has already been published. *See* Am. Compl. ¶¶ 28-29, 41.  For example, Plaintiffs complain that the September 2017 Article reported on affirmative defenses asserted by the defendants in the Maryland Action without later reporting that such defenses were rejected by the court—in June 2018.  *See* Shapiro Decl. Ex. 2 at 15-16; Am. Compl. ¶¶ 28-29.  And Plaintiffs complain that the October 2017 Article reported on an October 2, 2017 motion to compel without later noting that the motion was denied, but the denial did not issue until November 13, a month after publication.  *See* Shapiro Decl. Ex. 2 at 13; Am. Compl. ¶ 40.

Acceptance of Plaintiffs' theory of the case would represent a startling intrusion into reporters' and publishers' editorial discretion to determine what should be covered in each day's newspaper.  Courts have long recognized that they:

> must be slow to intrude into the area of editorial judgment, not
> only with respect to choices of words, but also with respect to

22

> inclusions in or omissions from news stories. Accounts of past events are always selective, and under the First Amendment the decision of what to select [for publication] must always be left to writers and editors. It is not the business of government.

*Weiner v. Doubleday & Co.*, 142 A.D.2d 100, 109 (1st Dep't 1988) (quoting *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1306 (8th Cir. 1986)), *aff'd*, 74 N.Y.2d 586 (1989). But Plaintiffs would have the fair report privilege depend on publishers ceding their fundamental editorial freedom to determine what is newsworthy. Covering any proceeding in which negative accusations are made against a party (which describes the vast majority of civil and criminal proceedings) would obligate the publisher to reserve space in the paper every day for continued reporting on the proceedings. The inevitable result would be that the press would be unable to cover judicial proceedings at all. This is plainly untenable.

Accordingly, it is clear that the articles are protected by the fair report privilege, and Plaintiffs' claims must be dismissed.

## C.     The October 2017 Article Is Substantially True

As a separate ground for dismissal, Plaintiffs do not and cannot plausibly plead—much less prove—that it was untrue for Defendants to report in the October 2017 Article that Olukoya falsely claimed to be a Maryland resident in the MFM Maryland Articles of Incorporation. Indeed, Olukoya designated himself as the resident agent of a Maryland religious corporation.

Truth is an absolute shield to defamation liability, *Koren*, 22 Md. App. 576, 325 A.2d 140, and the plaintiff bears the burden of pleading and proving falsity. *Murray v. United Food & Commercial Workers Int'l Union, Local 400*, 229 F. Supp. 2d 465, 476 (D. Md. 2003), *aff'd*, 100 F. App'x 165 (4th Cir. 2004); *Trundle v. Homeside Lending, Inc.*, 162 F. Supp. 2d 396, 400 (D. Md. 2001); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017). "If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a

23

defamation claim." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595, 601 (D.C. Cir. 1988)); *see also Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).

Plaintiffs complain that the October 2017 Article supposedly relied on Articles of Incorporation showing Olukoya "as a trustee of the religious corporation in [Bowie] Maryland that was the subject of the Prince George's County litigation."  Here, Plaintiffs implausibly allege that the Articles of Incorporation on which the October 2017 article was supposedly reporting are the Articles of Incorporation which, in turn, [list] "an address for Dr. Olukoya in Lagos, Nigeria." Am. Compl. ¶ 38.  This allegation is facially frivolous and willfully misstates the contents of the article.  Indeed, as is perfectly obvious from even a cursory reading, the October 2017 Article was reporting on the motion to compel in the Maryland Action and on the Articles of Incorporation of the MFM ***Baltimore*** chapter, which were annexed as an Exhibit to the motion to compel.  The article includes an image of the first page of the Articles of Incorporation for the MFM ***Baltimore*** chapter (not the ***Bowie*** chapter as Plaintiffs allege).  *See* Shapiro Decl. Ex. 7 at 2.[12]

The image of the MFM Baltimore Articles of Incorporation shows that Olukoya did in fact represent that he had a Baltimore address, and the full two-page exhibit shows that he further signed as the "resident agent" of MFM Baltimore.  *See* Shapiro Decl. Ex. 4.  Maryland state law requires an individual who is designated as a resident agent be a Maryland resident.  *See* Md. Code Ann., Corps. & Ass'ns § 1-101(w) ("'Resident agent' means an individual ***residing in this State or a Maryland corporation*** or limited liability company whose name, address, and

---

[12] Certainly, where Plaintiffs' "characterization of the contents of the [articles] conflicts with the articles themselves, it is the articles that control." *Watkins v. Washington Post*, No. PWG-17-818, 2018 WL 805394, *3 (D. Md. Feb. 9, 2018).

designation as a resident agent are filed or recorded with the Department in accordance with the provisions of this article.") (emphasis added); Md. Code Ann., Corps. & Ass'ns § 5-304(b)(3) ("The articles of incorporation [for a religious corporation] shall contain: … (3) The name and address of the resident agent of the church."). It is undisputed that Olukoya is not a resident of Maryland, but at all times has been a resident of Nigeria. *See* Am. Compl. ¶¶ 1, 40. Therefore, it was entirely true for Defendants to report that Olukoya falsely represented in the MFM Baltimore Articles of Incorporation that he resided in Maryland.

**D.      Plaintiffs' False Light Claim Must Be Dismissed**

Under Maryland law, a claim for placing the plaintiff in false light "may not stand unless the claim also meets the standards of defamation." *Piscatelli*, 197 Md. App. at 37-38, 12 A.3d at 173); *see also Watkins*, 2018 WL 805394, at *4, *7. Accordingly, because Plaintiffs' "defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech." *Farah*, 736 F.3d at 540. *See also Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 503 n.5 (D. Md. 2015) ("false light claim need not be assessed separate and apart from … defamation claim because '[a]n allegation of false light must meet the same legal standards as an allegation of defamation[]'") (quoting *Piscatelli*, 424 Md. at 306, 35 A.3d at 146-47), *aff'd*, 646 F. App'x 294 (4th Cir. 2016).

## CONCLUSION

Wherefore, Defendants respectfully request that the Court enter an order granting their Motion to Dismiss the Amended Complaint in its entirety and with prejudice, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, and granting such further relief as the Court deems just and proper.

This 15th day of February, 2019.

Respectfully submitted,

_____/s/ Lisa B. Zycherman_____
Lisa B. Zycherman (D. Md. Bar # 16969)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Ph: 202-973-4200; Fax: 202-973-4499
lisazycherman@dwt.com

*Counsel for Defendants Omoyele Sowore
and Sahara Reporters Media Group Inc.*

26