UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DANIEL KOLAWALE OLUKOYA, *as an Individual*,
MOUNTAIN OF FIRE AND MIRACLES MINISTRIES, INC., *a Nevada Corporation*,
and
MOUNTAIN OF FIRE AND MIRACLES MINISTRIES, BOWIE, MARYLAND, INC., *a Maryland Corporation*,

    Plaintiffs,

v.

OMOYELE SOWORE, *as an Individual*, and SAHARA REPORTERS MEDIA GROUP, INC., *a New York Corporation Doing Business as Sahara Reporters*,

    Defendants.

Civil Action No. TDC-18-2922

**MEMORANDUM OPINION**

Plaintiffs Daniel Kolawole Olukoya, Mountain of Fire and Miracles Ministries, Inc. ("MFM Nevada"), and Mountain of Fire and Miracles Ministries, Bowie, Maryland, Inc. ("MFM Bowie"), have filed this civil action against Defendants Omoyele Sowore and Sahara Reporters Media Group, Inc. ("Sahara"), alleging that Defendants defamed them in two online articles published in September and October 2017. Plaintiffs assert common law tort claims for defamation, defamation *per se*, and false light. Presently pending before the Court is Defendants' Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Olukoya is the founder and General Overseer of Mountain of Fire and Miracles Ministries ("MFM"), an international ministry formed in Nigeria with branches in Maryland and across the United States. The church's United States headquarters is located in Nevada. Sowore is the operator of Sahara Reporters, an online news outlet based in New York, which mainly reports on events affecting Nigeria. The parties have a long and tenuous history, dating back to 2013 when Sahara Reporters published an article alleging that MFM church security assaulted and detained its reporters at a New Year's Eve event. The 2013 article is not at issue in the current case.

The present action centers around two articles published by Sahara on its website in the fall of 2017 which reported on litigation involving MFM and MFM Nevada. The first article, published on September 27, 2017 and entitled *Former Mountain of Fire Ministries Pastors Accuses General Overseer Olukoya of Illegal Importation of Goods in US Property Dispute* ("the September Article"), primarily reports on a civil lawsuit that was then pending in the Circuit Court of Maryland for Prince George's County ("the Maryland Action"). That case had been filed by MFM and MFM Nevada against several former church members, including MFM Bowie's former pastor Lawrence Adetunji, who allegedly misappropriated assets owned by MFM and MFM Nevada to form a new religious corporation. In the article, Sahara wrote that "the defendants alleged that the plaintiffs had willfully and intentionally evaded U.S. Customs Service duties and had evaded tax payments to the United States Government" on prayer books shipped from Nigeria for many years. Am. Compl. ¶ 18, ECF No. 21. Plaintiffs allege that these accusations, which were lifted from the Amended Answer and Amended Counterclaims of the Maryland Action defendants, are false and misleading, as they are unsubstantiated due to the lack

of evidence offered by Pastor Adetunji and his wife in their depositions, which occurred several months before the article's publications, or at the subsequent trial. In the September Article, Sahara also briefly described a similar civil action brought by MFM against former Pastor Ade Oyeyemi in the Superior Court of Los Angeles, California ("the California Action") and reported that the California Court of Appeal "ultimately decided the case in favor of Pastor Oyeyemi." Am. Compl. ¶ 31. Plaintiffs allege that this aspect of the September Article was also false and misleading because Oyeyemi was only partially successful on appeal.

The second Sahara article, published on October 19, 2017 and entitled *GO of Mountain of Fire and Miracles Ministries Daniel Olukoya Falsely Claims Residence of US State of Maryland* ("the October Article"), also reports on the Maryland Action and information derived from its filings. The article states that in a motion to compel filed in the Maryland Action, "the defendants stated that they requested [Olukoya's] presence at deposition or trial via a subpoena served through the plaintiff's . . . attorney, but the plaintiff refused to produce Olukoya for that purpose." Am. Compl. ¶ 37. Plaintiffs contend that MFM objected to the deposition because Olukoya, who was not a party to the Maryland Action, was not properly served, is not a United States citizen or resident, and was traveling in Europe at the time. They also note that the October Article neglects to mention that MFM and MFM Nevada offered to arrange for Olukoya to appear by video for his deposition, but the Maryland Action defendants declined.

The October Article also asserts that Olukoya "falsely affirmed himself to be a legal resident of the State of Maryland in the United States for business purposes." *Id.* The article states that in the Articles of Incorporation of the MFM church in Baltimore ("MFM Baltimore"), which were attached to a filing in the Maryland Action, "Olukoya claimed to be a Resident Agent for Service for MFM Baltimore, and personally signed the Articles in that capacity." *Id.*

Plaintiffs allege that these statements are false and misleading because the Articles of Incorporation list Olukoya only as a trustee with an address in Nigeria.

On September 20, 2018, Plaintiffs filed their Complaint in this Court asserting claims of defamation (Count 1), defamation *per se* (Count 2), and false light (Count 3). After Defendants filed a Notice of Intent to file a Motion to Dismiss, the Court granted Plaintiffs leave to file an amended complaint, pursuant to an agreement of the parties that "if the Court finds the amended complaint deficient on a basis identified in the Notice of Intent to File a Motion, ECF No. 17, Plaintiff will not be granted further leave to amend." Order at 1, ECF No. 20. Plaintiffs then filed an Amended Complaint with supplemental factual allegations in support of the same three counts, and Defendants moved to dismiss consistent with the arguments raised in their Notice of Intent.

## DISCUSSION

Defendants seek dismissal of all counts of the Amended Complaint on the basis that the fair report privilege shields them from defamation liability. As an alternative argument, Defendants argue that Plaintiffs have not adequately pleaded falsity as to the portion of the October Article accusing Olukoya of falsely claiming Maryland residency. Finally, Defendants state that Plaintiffs' false light claim must be dismissed because under Maryland law, a claim for false light will not stand unless the claim also meets the standards for a defamation claim.

### I. Legal Standards

#### A. Motion to Dismiss

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In support of the Motion, Defendants have submitted various exhibits, including the September Article, the October Article, and certain filings from the Maryland Action. Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Courts may also consider facts and documents subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." *Id.* (quoting *B.H. Papasan v. Allain*, 578 U.S. 265, 283 (1986)); *see also Zak*, 780 F.3d at 607 ("[C]ourts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (quoting Fed. R. Evid. 201)). Accordingly, in resolving the Motion, the Court will consider the September and October Articles, which are integral to the Amended

Complaint and quoted extensively in it, and the filings in the Maryland Action, which are public documents of which it takes judicial notice.

## B. Defamation

To establish *a prima facie* case of defamation under Maryland law, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001). "A false statement is one that is not substantially correct." *Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992). When the statement accuses the plaintiff of a crime for which the plaintiff could be prosecuted, it is defamatory *per se*, and the injurious effect is presumed. *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119 (Md. 1979). In the present case, all parties agree that the Court should apply Maryland law to Plaintiffs' defamation claims.

## II. Fair Report Privilege

The fair report privilege protects from defamation claims reporting on "legal and official proceedings that are, in and of themselves defamatory, so long as the account is 'fair and substantially accurate.'" *See Piscatelli v. Van Smith*, 35 A.3d 1140, 1149 (Md. 2012) (quoting *Chesapeake Publ'g Corp. v. Williams*, 661 A.2d 1169, 1174 (Md. 1995)). As a threshold matter, the parties dispute whether Maryland or New York law applies to Defendants' affirmative defense of the fair report privilege, as the articles were posted online in New York, but their effect was experienced in Maryland. The Court need not resolve this question because the standard for the fair report privilege as applied to this case is the same under both Maryland and New York law, even though the privilege is technically a qualified privilege under Maryland law and an absolute privilege under New York law.

Although the fair report privilege is a qualified privilege in Maryland, the Court of Appeals of Maryland has adopted a modern approach to the privilege that "'discards the search for malice, and simply requires that the report be fair and substantially correct.'" *Id.* at 1149 n.3 (quoting *Rosenberg v. Helinski*, 616 A.2d 866, 872-73 (Md. 1992)). Thus, the fair report privilege fails to protect a defendant "not upon a showing of actual malice (as with other common law conditional privileges), but when the defendant's account 'fails the test of fairness and accuracy.'" *Id.* at 1149 (quoting *Chesapeake*, 661 A.2d at 1175). Fairness and accuracy is satisfied "when the reports are substantially correct, impartial, coherent, and bona fide." *Id.* (citing *Batson v. Shiflett*, 602 A.2d 1191, 1213 (Md. 1992)).

In New York, the fair report privilege is absolute and codified in Section 74 of the Civil Rights Law, which states in part that "a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . " N.Y. Civ. Rts. L. § 74 (2011); *see Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979). The New York Court of Appeals has held that a publication is "fair and true" if it is "substantially accurate." *Holy Spirit*, 399 N.E.2d at 1187; *see also Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (applying New York law). The standard allows for "some liberality" in that the language "should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit*, 399 N.E.2d at 1187. However, the report is not substantially accurate if "it would have a different effect on the mind of the recipient than the actual truth" or would suggest "more serious conduct than that actually suggested in the official proceeding." *Karedes*, 423 F.3d at 119 (internal citation omitted).

Thus, under either Maryland or New York law, pleading actual malice does not defeat the application of the fair report privilege, and the privilege is forfeited only when the report fails the test of fairness and substantial accuracy.

However, under both Maryland and New York law, the fair report privilege is an affirmative defense. *See Piscatelli*, 35 A.3d at 1147 (stating that "the defendant bears the burden of proof to establish the [fair reporting] privilege"); *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 354 (N.Y. 1985) (referring to the statutory fair report privilege as an affirmative defense); *Greenberg v. Spitzer*, 155 A.D.3d 27, 42 (N.Y. App. Div. 2017) ("The privilege afforded by Civil Rights Law § 74 is an affirmative defense to a claim of defamation."). A motion to dismiss under Rule 12(b)(6) "does not generally invite an analysis of potential defenses to the claims asserted in the complaint." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000). A court may consider defenses on a motion to dismiss only when "the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Id.* Thus, although Defendants are correct that Maryland and New York courts have granted pre-answer motions to dismiss defamation actions based on the fair report privilege, they have generally done so based only on the face of the complaints at issue and where there could be no dispute, construing the facts in the light most favorable to the plaintiff, that the reporting was fair and substantially accurate. *See, e.g., Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 433-34 (D. Md. 2005) (applying the fair report privilege to grant a motion to dismiss a claim that the article improperly used the word "rape," where the official Department of Justice materials reported on by the article used the term "sexual assault").

8

A.  September Article

The Court addresses the September and October Articles separately because each statement constitutes a "separate instance of defamation" that must be specifically alleged. *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished). *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 (D. Md. 2015) ("To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement."); *Gainsburg v. Steben & Co., Inc.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (stating that a plaintiff cannot simply allege "a pattern of false statements made for the purpose of bringing [the plaintiff] into disrepute"). Each statement must be viewed in the context of the whole article to fairly assess its alleged falsity. *See Heath v. Hughes*, 197 A.2d 104, 107 (Md. 1964); *Karedes*, 423 F.3d at 113-14.

Defendants argue that the fair report privilege shields them from liability for publication of the September Article because the article reports, almost word-for-word, on content from the Amended Answer and Amended Counterclaims of the Maryland Action defendants and even links to a copy of the original court documents filed in the Circuit Court for Prince George's County. Plaintiffs acknowledge that a large portion of the September Article "essentially repeats language from the 'First Affirmative Defense.'" Am. Compl. ¶ 19. However, the headline of the September Article, construed in the light most favorable to Plaintiffs, is not "fair and substantially accurate" or "fair and true," particularly as it relates to Olukoya. *Piscatelli*, 35 A.3d at 1149; N.Y. Civ. Rts. L. § 74.

The September Article is framed as a personal indictment of Olukoya, but, as Plaintiffs allege, and Defendants do not dispute, Olukoya was not a party to the Maryland Action. The article features a prominent photograph of Olukoya, and the headline reads: "Former Mountain

of Fire Miracles Ministries Pastors Accuses General Overseer Olukoya of Illegal Importation of Goods in US Property Dispute." Mot. Dismiss Ex. 6 at 1, ECF No. 22-2. The subheading states:

> Daniel Olukoya, General Overseer of the Mountain and Fire Miracles Ministries (MFM), is in the spotlight in a US court after his group . . . dragged some former pastors and members to court over monetary and property disputes. The sued pastor and former church members have in turn accused the General Overseer of engaging in fraudulent activities in the US, including evasion of duties owed to US authorities.

*Id.* This reporting suggests that Olukoya was personally involved in the alleged scheme to evade taxes and customs duties, but the Maryland Action defendants' filing named only MFM. Indeed, the Amended Answer and Amended Counterclaims on which the September Article relies does not even mention Olukoya by name and, as reported in the October Article, Olukoya was never deposed in the Maryland Action.

The depiction of Olukoya as a party in the Maryland Action accused of illegally importing goods has a "different effect" on the reader, suggesting more serious conduct than the court filing itself suggested. *See Karedes*, 423 F.3d at 119 (quoting *Calvin Klein Trademark Trust v. Wachner*, 129 F. Supp. 2d 248, 253 (E.D.N.Y. 2001)). Although it may be reasonable to infer that Olukoya, as the General Overseer of MFM, might be in the spotlight or involved in the alleged illegal activity, this distinction is not discussed in the Maryland Action filings such that the fair report privilege would apply. The fair report privilege shields defendants from liability only for fair and substantially accurate reporting on official proceedings that themselves may cast the plaintiff in a defamatory light, not potentially false inferences drawn from those proceedings and reported as fact. *See, e.g., Piscatelli*, 35 A.3d at 1149 (stating that the fair report privilege is designed to protect the media when reporting on "official proceedings that are, in and of themselves, defamatory"); *Karedes*, 423 F.3d at 118-19 (declining to apply the fair report privilege to a potentially defamatory inference about a specific individual, the manager of a

public golf course, that could be drawn from a town audit). Although a news outlet "is permitted some drama in grabbing its reader's attention" in headlines and subheadings, the headline must still be a "'fair index' of the 'substantially accurate' material included in the article." *Test Masters Educational Services, Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) (applying New York law and quoting *Gunduz v. New York Post Co.*, 188 A.2d 294, 294 (N.Y. App. Div. 1992)). The headline and subheading of the September Article, construed in the light most favorable to the Plaintiffs, arguably go beyond mere drama and accuse Olukoya of a crime of which he was never personally accused in the Maryland Action. Accordingly, Defendants have not met their burden of showing that the allegedly defamatory statements in the September Article, considered in the context of the entire article, constituted a fair and substantially accurate report of litigation proceedings. Thus, the fair report privilege does not apply, and the Motion will be denied as to the statements relating to the Maryland Action in the September Article.

Defendants also argue that the fair report privilege shields them from liability for their reporting on the California Action. The September Article reported that, "[t]he Fourth Division of the Second Appellate District of the California State Court of Appeal ultimately decided the case in favor of Pastor Oyeyemi." Mot. Dismiss Ex. 6 at 3. Where the California Court of Appeal reversed the judgment of the jury against Oyeyemi and remanded the case, *see Mountain of Fire & Miracles Ministries v. Oyeyemi*, No. B218591, 2012 WL 2373003, at *13 (Cal. Ct. App. June 25, 2012), the September Article's summary of the disposition is substantially fair and accurate. *See Piscatelli*, 35 A.3d at 1149; N.Y. Civ. Rts. L. § 74. Moreover, it is not even clear that Plaintiffs intend to pursue a claim relating to the statement about the result on the California Action, as they do not specifically identify that statement in the defamation count of their

Amended Complaint. *See, e.g., Salisbury Univ.*, 123 F. Supp. 3d at 758 (holding that "a plaintiff must specifically allege each defamatory statement"). In their memorandum in opposition to the Motion, Plaintiffs do not respond to Defendants' argument regarding the California Action and thus concede the point. *See, e.g., Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) (rejecting the plaintiff's theory of agency liability where the plaintiff failed to address the defendant's argument on the point); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing a claim as abandoned where the plaintiff failed to respond to the defendant's argument). Accordingly, to the extent that Plaintiffs seek to pursue a defamation claim based on the September Article's statement regarding the California Action, that claim will be dismissed.

**B.     October Article**

Defendants also argue that the fair report privilege shields them from liability for defamation as to the entire October Article. Plaintiffs challenge two aspects of the October Article as defamatory: the section reporting on the Maryland Action defendants' attempts to depose Olukoya in the Maryland Action and the section reporting that Olukoya "falsely affirmed himself to be a legal resident of the State of Maryland." Am. Compl. ¶ 37.

Regarding the deposition, Plaintiffs allege that the article's statement that the Maryland Action plaintiffs "refused" to produce Olukoya for deposition is only part of the story, such that the article does not fairly and accurately report on the history of the litigation. *Id.* Specifically, Plaintiffs claim that the deposition subpoena was never served on Olukoya; he was not subject to the jurisdiction of the Maryland court; and MFM offered to have Olukoya appear by video, but the other party declined. None of these points were reflected in the article, but this portion of the October Article is still protected by the fair report privilege. The details about the deposition

were taken almost word-for-word from a motion to compel filed by the Maryland Action defendants. The article reported that in the motion to compel, "the defendants stated that they requested [Olukoya's] presence at the deposition or trial via a subpoena . . . but the plaintiff refused to produce Olukoya for that purpose." Mot. Dismiss Ex. 7 at 2, ECF No. 22-2. The article further stated that "[the defendants] argue that Olukoya's testimony is crucial in the case because he is a signatory of at least three documents that are central to their defense in the case." *Id.* These statements accurately report on allegations made in the motion to compel, in which the Maryland Action defendants asserted that "the Plaintiffs have refused to produce for deposition . . . Daniel Olukoya" and argued that "Dr. Olukoya's testimony is crucial in this case for the reason that he is the signatory on at least three documents that are central to Defendants' defenses in this case." Mot. Dismiss Ex. 4 at 2, ECF No. 22-2.

The October Article further stated that the "purported grounds that plaintiffs have cited in refusing to produce Olukoya is that he is 'not a party' to the litigation and that he 'resides in Lagos, Nigeria' and is therefore beyond service of process by the courts." Mot. Dismiss Ex. 7 at 2. This statement was directly quoted from the motion to compel. Mot. Dismiss Ex. 4 at 2. Indeed, Plaintiffs acknowledge in the Complaint that MFM objected to the request for a subpoena because "Dr. Olukoya is not a citizen or resident of the United States" and therefore "was not subject to the jurisdiction of [the Maryland] Court." Am. Compl. ¶ 40.

Thus, the portion of the October Article relating to the motion to compel Olukoya's deposition in the Maryland Action is "substantially correct, impartial, coherent, and bona fide," *Piscatelli*, 35 A.3d at 1149, because it "essentially summarize[s] or restate[s] the allegations of a pleading filed in [the] action." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 94 (2d Cir. 2017)

(quoting *Lacher v. Engel*, 33 A.D.3d 10, 17 (N.Y. App. Div. 2006)). Accordingly, these statements are protected by the fair report privilege.

As for the section of the October Article that reports that Olukoya falsely affirmed himself to be a resident of Maryland, the fair report privilege does not apply. Although this statement was based on the MFM Baltimore Articles of Incorporation, which were attached to the motion to compel filed in the Maryland Action, the idea that Olukoya made a false affirmation was never asserted in the motion to compel, which referenced Olukoya's status as resident agent for MFM Baltimore as part of an argument that he was subject to service of process for a deposition. Rather, as the basis for its claim that Olukoya made a false statement about his residency, the October Article states that "a Sahara Reporters investigation reveals that Olukoya is not and has never been a legal resident of the State of Maryland." Mot. Dismiss Ex. 7 at 2. Where Sahara had to conduct its own investigation to reach the conclusion that Olukoya's statement of residency in the MFM Baltimore Articles of Incorporation was false, the Court cannot conclude that this statement was a protected account of official proceedings and finds that the fair report privilege does not protect this statement.

### III. Falsity

Defendants offer another basis for dismissal of the defamation claim arising from the statement in the October Article that Olukoya falsely stated that he was a Maryland resident: that the statement is true. Although Defendants frame their argument as a defense of "truth," under Maryland law, which all parties agree applies to Plaintiffs' defamation claim, "truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity rests upon the plaintiff." *Telnikoff v. Matusevitch*, 702 A.2d 230, 246 (Md. 1997).

Plaintiffs allege that Defendants defamed them in the October Article by reporting that Olukoya falsely claimed to be a legal resident of Maryland. According to Plaintiffs, "None of this is true." Am. Compl. ¶ 38. In support of this conclusory allegation, *see Iqbal*, 556 U.S. at 678, Plaintiffs state that:

> The Articles of Incorporation being referred to show Dr. Olukoya as a trustee of the religious corporation in Maryland that was the subject of the Prince George's County litigation. The Articles of Incorporation show an address for Dr. Olukoya in Lagos Nigeria. The Resident Agent shown on the Articles of Incorporation is Abimbola Aroyewun, listing a Randallstown, Maryland address.

Am. Compl. ¶ 38. Upon review of the various sets of Articles of Incorporation attached to the motion to compel filed by the defendants in the Maryland Action, it is clear that this assertion erroneously relies on the Articles of Incorporation for MFM Bowie. The assertion in the October Article, however, plainly relies on a different set of Articles of Incorporation, those for MFM Baltimore, which were also attached to the motion to compel filed in the Maryland Action. The MFM Baltimore Articles of Incorporation specifically list Olukoya as the resident agent of MFM Baltimore and provide a Maryland address for him. Olukoya also signed the document as the resident agent. Maryland state law requires an individual who is designated as a resident agent to be a Maryland resident. *See* Md. Code Ann., Corps. & Ass'ns § 1-101(w) (West 2019). The MFM Baltimore Articles of Incorporation thus directly contradict Plaintiffs' assertion that the statement in the October Article was not true.

Furthermore, Plaintiffs contend that the October Article's statement was not true only because the MFM Bowie Articles of Incorporation list Olukoya as a trustee, not the resident agent, and included a Nigerian address for him. Notably, they do not plead that Olukoya was in fact a Maryland resident at the time that he signed the MFM Baltimore Articles of Incorporation or that the report that he is not a Maryland resident was false. In fact, Plaintiffs admit in the

Amended Complaint that Olukoya is not a citizen or resident of the United States. Therefore, the Court finds that Plaintiffs have not sufficiently pleaded falsity as to this challenged aspect of the October Article. As with the rest of the challenged statements in the October Article, which are protected by the fair report privilege, *see supra* section II.B, Plaintiffs have not adequately pleaded defamation arising from these statements in the October Article. The Motion to Dismiss will be granted as to all statements in the October Article.

## IV. False Light

Defendants argue that Plaintiffs' false light claims must be dismissed because their defamation claims fail. Under Maryland law, "[r]egardless of whether a declaration is styled as a defamation action or an invasion of privacy action, the same considerations and legal standards apply." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 n.1 (4th Cir. 1990) (alteration in original) (quoting *Phillips v. Wash. Magazine, Inc.*, 472 A.2d 98, 101 n.1 (Md. Ct. Spec. App. 1984)); *see Piscatelli*, 35 A.3d at 1146–47 (holding that it is "superfluous" to separately analyze a false light claim after concluding that the defamation claim failed). Here, as discussed above, the Court will dismiss the defamation claims based on statements in the October Article and the statement in the September Article relating to the California Action, but will not dismiss the defamation claim based on the statements in the September Article relating to the Maryland Action. Accordingly, the Court will likewise find that Plaintiffs have adequately stated a false light claim based on the statements in the September Article relating to the Maryland Action, but have failed to do so for the remaining false light claims. The Motion will be granted as to all false light claims except the claim based on the statements in the September Article relating to the Maryland Action.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is granted as to the defamation and false light claims based on (1) the statements in the September Article relating to the California Action and (2) all statements in the October Article. The Motion is otherwise denied. A separate Order shall issue.

Date: August 1, 2019



THEODORE D. CHUANG
United States District Judge